**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DEWAYNE HENDRIX,

    Plaintiff,

v.                                                  CASE NO:  8:04-CV-2172-T-30EAJ

UNITED STATES OF AMERICA,

    Defendant.
_____/

## ORDER

THIS CAUSE came before the Court for non-jury trial on January 16 and 17, 2007. After hearing the testimony of the witnesses and reviewing the documentary evidence, including the medical records, the Court concludes that the employee of the United States was negligent in striking Plaintiff's bicycle causing Plaintiff to fall to the ground. The fall temporarily exacerbated Plaintiff's low back condition, but caused no permanent injury.

### Findings of Fact

On January 13, 2003, Plaintiff Dewayne Hendrix (hereinafter "Plaintiff"), a 41-year old, 5'9 male weighing 360 pounds, was standing astride his bicycle in the median of a six-lane highway in Lakeland, Florida, waiting for the traffic to clear so that he could cross the remaining three lanes. A government employee driving a pick-up truck made a left-hand turn across the median and struck the rear wheel of Plaintiff's bicycle. This knocked the bicycle into the air and the Plaintiff to the ground.

An ambulance was called. When it arrived, the EMS personnel noted that Plaintiff complained of upper leg pain, but denied any head, neck, or back pain. Plaintiff was in no obvious distress. The paramedic reported there was no visible damage to the truck, but the rear wheel of the bicycle was damaged.

Plaintiff was taken by ambulance to the Winter Haven Hospital where he complained of pain in his left hip and thigh, but denied any other complaints, including neck or back pain. There were no abrasions or lacerations. He was diagnosed with a bruised left hip and thigh, prescribed Motrin, and told to see an orthopedic doctor within five days if he was not feeling better. He was also given an instruction sheet for high blood pressure and told to see a doctor for his blood pressure within seven days. He was released from the hospital after three hours.

A week later, on January 20, 2003, Plaintiff went to First Care in Winter Haven. He complained of pain in his left buttock radiating down his left leg. An examination revealed that he had a normal heel-to-toe gait and full range of motion. The midline and left lumbar area of his back was tender to palpation, but had no abrasions, discoloration or obvious boney abnormality. He was diagnosed with low back pain and sciatica given an information sheet on back pain and told to call an orthopedic doctor for follow up. X-rays were taken which revealed no fracture or dislocation of the left hip and normal lumbar vertebral bodies and intervertebral disc spaces. No acute boney abnormality was seen. A partial lumbarization of S-1 was noted.

On January 27, 2003, Plaintiff reported to the Lakeland Spine Center. He thereafter had a total of forty-two visits, but received no improvement from the physical therapy and chiropractic adjustments. In reporting his history, Plaintiff denied ever having had back pain prior to the accident in question.

An MRI was performed on November 4, 2003, which indicated disc dessication and disc space narrowing at the L4-5 level with a central disc herniation at that level. The reading doctor reported that this could be affecting the exiting L4 or L5 nerve roots.

The Lakeland Spine Center referred Plaintiff to Dr. John Amann, a neurologist, and Plaintiff had his first appointment with Dr. Amann on February 16, 2004. The initial screening was performed by a physician's assistant, Cheryl Batcheldor. Again, Plaintiff denied having any back pain prior to the accident in question. Dr. Amann, relying upon this history and the MRI, formed the opinion that the herniated disc was a result of the subject accident. But Plaintiff's history was false. As early as June 2001, Plaintiff had reported chronic back pain to other medical providers.

On October 23, 2002, Plaintiff hurt his back lifting plumbing pipe at his job. He told that doctor that he had had chronic back pain for the past ten months. He was diagnosed with a "pinched nerve," told to rest for three days and then go back to work. His employer would not let him come back to work without a release from the doctor. According to Plaintiff, even though his back no longer hurt, he did not have the money to go back to the doctor to get a letter of release and thought it was easier to just quit and get another job. Plaintiff was still unemployed on the date of the subject accident, January 13, 2003, but, according to

Plaintiff, was on his way to an employment agency to seek work when the accident happened. Notably, Plaintiff's previous job where he hurt his back lifting pipe only lasted eight days. He had been hired October 15, 2002, after a company physical. Contrary to the history he gave eight days later, Plaintiff told the doctor in the pre-hiring physical that he had never had back pain. The previous year, on June 19, 2001, Plaintiff was seen at First Care for a sore throat and cough. He admitted then in his history that he had chronic back pain.

Plaintiff's neurologist, Dr. Amann, acknowledged on cross-examination that if a patient was involved in a low speed impact, walked out of the hospital that day, denied back pain, and one week later had full range of motion in his back, he would not highly suspect disc herniation resulting from that impact. He also acknowledged that, statistically, disc herniations occur as often from degeneration as they do from trauma, and that being overweight contributes significantly to degeneration.

The government had Plaintiff examined by Vladimir Alexander, an orthopedic surgeon. He opined that Plaintiff's back pain resulted from the degenerative changes in his spine that occurred over a long period of time and was not the result of the accident in question. Further, he testified that Plaintiff's weight contributed significantly to the arthritic changes in his spine and the degeneration of the vertebral discs.

After considering the foregoing, this Court finds that Plaintiff's pre-existing back condition was temporarily exacerbated as a result of this accident, but the exacerbation was not permanent. Plaintiff's back condition pre-existed the accident and would have caused him increasing problems even without the accident.

**Discussion**

Florida Statute 627.737(2)(b) states, in pertinent part, that a tort action may not be brought against an owner of a vehicle unless the injury resulting from the accident consists of a permanent injury within a reasonable degree of medical probability, other than scarring or disfigurement. Here there is no permanent injury.

Given these findings of fact, the parties are requested to submit a short Memorandum to the Court within fifteen (15) days of the date of this Order regarding the damages, if any, recoverable by Plaintiff. For example, Plaintiff did suffer the loss of his bicycle which the evidence showed to be worth $100.00. The parties are also requested to address whether any out-of-pocket medical expenses are recoverable. The Court concludes that the ambulance bill, the January 13th visit to the Winter Haven Hospital, the January 20th visit to First Care, and the x-rays taken by Winter Haven Hospital on January 20th and 21st, are all related to the temporary exacerbation of Plaintiff's pre-existing back condition.

**DONE** and **ORDERED** in Tampa, Florida on January 23, 2007.

JAMES S. MOODY, JR.
UNITED STATES DISTRICT JUDGE

**COPIES FURNISHED TO**:
Counsel/Parties of Record

*S:\Even\2004\04-cv-2172.findings of fact.wpd*